**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**ROBERT H. AJAMIAN,**

                       **Plaintiff,**

   **vs.**                                                     **1:13-cv-1316
                                                           (MAD/TWD)**

**STATE OF NEW YORK; NEW YORK STATE
SUPREME COURT, APPELLATE DIVISION,
THIRD DEPARTMENT,**

                       **Defendants.**
_____

**APPEARANCES:**                               **OF COUNSEL:**

**ROBERT H. AJAMIAN**
30 Eberle Road
Latham, New York 12110
Plaintiff *pro se*

**OFFICE OF THE NEW YORK STATE**     **RICHARD LOMBARDO, AAG.**
**ATTORNEY GENERAL**
Albany Office
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     Plaintiff commenced this action on October 23, 2013, alleging violations of his constitutional rights by Defendants New York State and the New York State Supreme Court, Appellate Division, Third Department ("Third Department"). *See* Dkt. No. 1. Currently before the Court is Defendants' motion to dismiss. *See* Dkt. No. 8.

## II. BACKGROUND[1]

Plaintiff identifies himself as "Robert King Horen Ajamian King of Kings a royal sovereign[.]" Dkt. No. 12 at 27.[2] On January 10, 2012, Plaintiff filed a claim in the New York State Court of Claims against the State of New York. *See* Dkt. No. 8-3 at 2. The Court of Claims dismissed the claim because it merely "set[] forth vague and confusing allegations of 'delay of justice' and 'conflict of interest' of certain judges and lawyers with respect to certain proceedings in the Albany County Surrogate's Court and in the Appellate Division, Third Department." Dkt. No. 8-4 at 3. Plaintiff appealed this decision, and the Third Department dismissed his appeal. *See* Dkt. Nos. 8-5, 8-6. Plaintiff then filed a motion to reargue, and the Third Department denied the motion. *See* Dkt. No. 1 at 5. Plaintiff subsequently commenced this action, claiming, among other things, that the "Appellate Division 3rd Department is ignoring their own State laws, Federal laws, and international human rights laws regarding my property and damages regard [sic] Estate of [Plaintiff's father]." *Id.* at 2.

Plaintiff's papers are disorganized and difficult to follow, but it appears that Plaintiff's father, Armenak Ajamian, died intestate in June 1991. Plaintiff claims that the Third Department incorrectly distributed a portion of his father's estate, and Plaintiff incurred excessive legal fees "due to the corruption by Robert L. Katzman, Dennis W. Habel, Judge Cathryn M. Doyle, Richard E. Rowlands, and Troy Savings bank." Dkt. No. 12 at 27. Plaintiff also alleges that his father's death was the result of medical malpractice, and that "a malpractice case against our

---

[1] Since Plaintiff's complaint contains only vague and conclusory allegations, this background is derived from the allegations in the complaint, as well as from his response to Defendants' motion.

[2] To avoid confusion, whenever the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

father would have yielded 3 million." *Id.* at 2.

Plaintiff seeks to obtain $9,000,000.00 "in damages from the parties involved for the destruction of Estate property and failing to pursue lawsuits for medical malpractice, and damages to Armenak Ajamian[.]" Dkt. No. 1 at 3. Plaintiff also seeks "to expose violations of these above attorneys and thier [sic] violation of State and Federal laws[,]" as well as "to obtain justice against State of New York and against these lawyers who . . . damaged us over 9 million and delay [sic] justice and violated our constitutional rights." *Id.*

To arrive at this figure of $9,000,000.00, Plaintiff claims that his father's malpractice case would have yielded $3,000,000.00, and that "[m]y brother and I were personally damaged out of over 3 million in income[.]" Dkt. No. 12 at 2. He also asserts that "we care for a brother Richard Vartan Ajamian who is mentally disabled losing over 3 million due to his disability[,]" and also that his father "lost 5 million in earnings" because he was "discriminated in his medical profession by jealous doctors and hospital administrators[.]" *Id.* He claims that "if you add everything up it comes to 14 million in damages," but he "put a claim of 9 million which was 5 million less the actual damages[.]" *Id.* Plaintiff further asserts that he is "a legal King with sovereignty greater that [sic] the United States and subject to common law of the other Kings people like me[,]" and he is therefore "immune from statutory laws, and defenses[.]" *Id.*

In their motion to dismiss, Defendants argue that (1) this action is barred by the Eleventh Amendment, the doctrine of judicial immunity, and the *Rooker-Feldman* doctrine; (2) neither New York State nor the Third Department is a person within the meaning of 42 U.S.C. § 1983 ("Section 1983"); (3) the complaint fails to state a cause of action under Section 1983; and (4) Plaintiff failed to properly effect service upon Defendants. *See* Dkt. No. 8-1.

**III. DISCUSSION**

**A.     Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *id.* at 570.

Despite this recent tightening of the standard for pleading a claim, complaints by *pro se* parties continue to be accorded more deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 127 (2007). As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002).

**B.    The Eleventh Amendment**

Defendants argue that Plaintiff's claims must be dismissed because they are barred by the Eleventh Amendment. *See* Dkt. No. 8-1 at 3.

The Eleventh Amendment provides a state with sovereign immunity from suit. *See Virginia Office for Protection and Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) (citation omitted). "[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Id.* at 1638 (citation omitted). Generally, New York and its agencies enjoy sovereign immunity from suit in federal court under the Eleventh Amendment. *See Woods v. Rondout Valley Central Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (holding that the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities) (citation omitted). Moreover, "[t]he Appellate Divisions of the New York State Supreme Court are arms of the State of New York[,]" and, therefore, "are immune from suit under the Eleventh Amendment." *Bernstein v. New York*, 591 F. Supp. 2d 448, 465-66 (S.D.N.Y.

2008) (footnotes omitted).

In 1908, the Supreme Court decided *Ex parte Young*, 209 U.S. 123 (1908), which established an exception to the Eleventh Amendment sovereign immunity protection afforded to the states. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Com'n. of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 117 S. Ct. 2028, 138 L. Ed.2d 438 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)).

"Under *Ex parte Young*, the state officer against whom a suit is brought 'must have some connection with the enforcement of the act' that is in continued violation of the law." *In re Dairy Mart Convenience Stores, Inc. v. Nickel*, 411 F.3d 367, 372-73 (2d Cir. 2005) (quoting *Ex parte Young*, 209 U.S. at 157). "So long as there is such a connection, it is not necessary that the officer's enforcement duties be noted in the act." *In re Dairy Mart*, 411 F.3d at 373. Deciding whether a state official has violated federal law, however, "affects both the initial immunity inquiry as well as the ultimate decision on the merits." 17A James Wm. Moore *et al.*, *Moore's Federal Practice* § 123.40[3][a] (3d ed. 2004); *see also In re Dairy Mart*, 411 F.3d at 374. At this stage, a court's job is not to decide the merits of the claim, but "only determine whether [the plaintiff's] assertion that the [defendant's acts] resulted in a violation of federal law is . . . substantial and not frivolous[.]" *In re Dairy Mart*, 411 F.3d at 373.

In the present matter, Plaintiff is not seeking prospective relief, but is seeking "to obtain 9 million in damages from the parties involved[,]" and "to obtain justice against State of New York

6

. . . who took advantage of us and damaged us over 9 million[.]" Dkt. No. 1 at 3. Since New York State and the Third Department are immune from suit under the Eleventh Amendment, and Plaintiff is merely seeking money damages, his claims are barred by the Eleventh Amendment. *See Walker v. Connecticut*, 106 F. Supp. 2d 364, 369 (D. Conn. 2000) ("[I]n an action under 42 U.S.C. § 1983 'a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include any award of damages which requires payment of funds from the State Treasury'") (quoting *Edelman v. Jordan*, 415 U.S. 651, 677 (1974)).

Although the Eleventh Amendment bars this action in its entirety, in light of Plaintiff's *pro se* status, the Court will further assess his claims.

**C.     Judicial Immunity**

Defendants similarly argue that this action is barred by the doctrine of judicial immunity. *See* Dkt. No. 8-1 at 5.

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (citations omitted). This immunity is "from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citation omitted). The 1996 Congressional amendments to Section 1983 further barred injunctive relief and provided that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853 (1996); *see also Montero v. Travis*, 171 F.3d 757 (2d Cir. 1999). Therefore, a judge is immune from all

7

forms of suit unless he or she has acted either beyond the judge's judicial capacity, or "in the complete absence of all jurisdiction." *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011) (citing *Mireles*, 502 U.S. at 11, 112 S. Ct. 286).

In determining whether or not the judge acted in the "clear absence of all jurisdiction," the judge's jurisdiction is to be construed broadly, "and the asserted immunity will only be overcome when the 'judge clearly lacks jurisdiction over the subject matter.'" *Bliven*, 579 F.3d at 209 (quoting *Maestri v. Jutkofsky*, 860 F.2d 50, 52 (2d Cir. 1988)). "Whether a judge acted in a 'judicial capacity' depends on the 'nature of the act [complained of] itself, *i.e.*, whether it is a function normally performed by a judge, and [on] the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.'" *Ceparano v. Southampton Justice Court*, 404 Fed. Appx. 537, 539 (2d Cir. 2011) (quoting *Stump v. Sparkman*, 435 U.S. 349, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978)). "Further, if the judge is performing in his judicial capacity, the 'judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction."'" *Ceparano*, 404 Fed. Appx. at 539 (quotation omitted). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity.'" *Bliven*, 579 F.3d at 209 (quotation and other citation omitted). While absolute judicial immunity does not bar claims for prospective injunctive relief, such relief is not available under Section 1983 absent an allegation of a violation of a prior declaratory decree or that declaratory relief was unavailable. *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (quotation omitted).

In light of the foregoing, to the extent that Plaintiff is attempting to sue the justices of the Third Department for dismissing his appeal or denying his motion to reargue, these claims are

barred by judicial immunity.

**D.     The *Rooker-Feldman* Doctrine**

Defendants assert that this action is also barred by the *Rooker-Feldman* doctrine. *See* Dkt. No. 8-1 at 9.

"The *Rooker-Feldman* doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998) (citation omitted). "Such jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment." *Id.*

In *Exxon Mobil*, the Supreme Court held that the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceeding commenced and inviting district court review and rejection of those judgments." *Exxon Mobile Corp., v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). In light of *Exxon Mobile*, the Second Circuit has held that "there are four 'requirements' that must be met before the *Rooker-Feldman* doctrine applies." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (citation omitted). The requirements are as follows:

> First, the federal court plaintiff must have lost in state court. Second, the plaintiff must 'complain[ ] of injuries caused by [a] state-court judgment[.]' Third, the plaintiff must 'invite district court review and rejection of [that] judgment[ ].' Fourth, the state-court judgment must have been 'rendered before the district court proceedings commenced' - i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Green*, 585 F.3d at 101 (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d

9

Cir. 2005)). "The first and fourth requirements 'may be loosely termed procedural,' while the second and third requirements 'may be termed substantive.'" *Id.*

In the present matter, all four elements of *Rooker-Feldman* are met. Plaintiff lost in state court and his motion to reargue was denied. *See* Dkt. No. 1 at 5. He alleges that his injuries are the result of "the Appellate Division . . . ignoring thier [sic] own State laws, Federal laws, and international human rights laws[.]" Dkt. No. 1 at 2. He then sued in federal court to have the state court judgment overturned. *See id.* at 2-3. He commenced this federal lawsuit on October 23, 2013, which was after the state court judgment denying his motion to reargue on September 27, 2013. *See id.* at 5. As such, the elements in *Rooker-Feldman* are met, and this Court has no jurisdiction to modify or reverse the state court judgments. *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 167 (E.D.N.Y. 2010) ("'If Plaintiffs are correct that the state courts acted unconstitutionally, their proper recourse is to appeal to the higher courts of the state and then, if necessary, to the United States Supreme Court'") (quotation omitted).

**E.     The Meaning of 'Person' in 42 U.S.C. § 1983**

Defendants argue that neither New York State nor the Third Department is a person within the meaning of Section 1983, and since Plaintiff brought this action pursuant to Section 1983, his claims should be dismissed. *See* Dkt. No. 8-1.

Section 1983 provides in part that "[e]very person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]" 42 U.S.C. § 1983. The Second Circuit has held that "it is quite clear that the Appellate Division is not a 'person' within the meaning of 42 U.S.C. § 1983." *Zuckerman*

10

*v. Appellate Division, Second Dept., Supreme Court of the State of N.Y.*, 421 F.2d 625, 626 (2d Cir. 1970). Likewise, "it has been held that the state itself is also not subject to suit under Section 1983." *Id.* (citation omitted).

Accordingly, Plaintiff's complaint fails to state a cause of action as New York State and the Third Department are not 'people' within the meaning of Section 1983. *See id.*

**F.     The Allegations in Plaintiff's Complaint**

Defendants also argue that the complaint fails to state a cause of action under Section 1983 because it does not contain specific allegations demonstrating a deprivation of rights. *See* Dkt. No. 8-1 at 8.

"Complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (citations omitted).  The Supreme Court has held that a complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation omitted).

Here, Plaintiff's complaint consists entirely of conclusory assertions with no factual support.  The complaint accuses the Third Department of "ignoring thier [sic] own State laws, Federal laws, and international human rights laws" without any facts to support these assertions. *See* Dkt. No. 1 at 2.  In Plaintiff's supplemental papers, he claims that "the record shows that my damages are real, and legitimate that can be proven by concrete evidence[,]" but Plaintiff has not offered any facts in support of these claims. *See* Dkt. No. 12 at 2.  Instead, Plaintiff repeatedly alleges frivolous claims that certain Third Department justices are "working to destroy [his] estate

11

property[,]" and are "blind to our real damages because they are filled with hate and jealousy and conflict." *Id.* at 31. These frivolous claims do not state a cause of action.

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

Although Plaintiff is proceeding *pro se*, granting him leave to amend would not solve the substantive problems with his pleading. As previously stated, Defendants are entitled to Eleventh Amendment and judicial immunity. Likewise, Defendants are not 'people' within the meaning of Section 1983. Moreover, this action is completely barred by the *Rooker-Feldman* doctrine. As such, Defendants' motion to dismiss is granted, and Plaintiff's claims are dismissed without leave to amend. *See e.g., Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that while *pro se* litigants are generally given an opportunity to amend their complaints to cure any deficiencies, where "[t]he problem with [the] causes of action is substantive; better pleading will not cure [the deficiencies and r]epleading would . . . be futile," thus leave to amend should be denied) (citations omitted). Finally, to the extent that any of Plaintiff's claims can be construed as state-law claims, the Court declines to exercise supplemental jurisdiction over them.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 8) is **GRANTED** in its entirety; and the Court further

**ORDERS** that Plaintiff's claims are **DISMISSED** with prejudice; and the Court further

**ORDERS** that Plaintiff's motion for the appointment of counsel (Dkt. No. 13) is **DENIED as Moot**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case.

**IT IS SO ORDERED.**

Dated: August 11, 2014
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge